Turuey, J.
delivered the opinion of the court.
In the year 1838, complainant’s intestate, sold to J. II. Moore, a negro man at the price of $1000, to be paid on the 25th day of De» *454 cember, 1839. At the time of the sale the parties were resident citizens of the State of Tennessee, but Moore early in 1839 became, by change of residence, a citizen, of the State of Alabama, and carried with him the negro purchased as aforesaid. Moore finding it inconvenient to pay the purchase money on the 25th day of December, 1839, made a contract in the State of Tennessee with the intestate, by which he agreed to re-sell the negro to her for the sum of $875, for which amount he received a credit on his note for the original purchase'money. This contract was by parol, and no bill of sale was executed by Moore; the negro being in Alabama, was not delivered, but at a subsequent period was sent to the intestate, but before reaching her residence, was seised by executions on judgments in the State of Tennessee in favor of the defendant against Moore, and this bill is filed to enjoin the proceedings. .
The question for consideration is, whether the sale of the negro by Moore to Mrs. Ewing, the intestate, is void under our statute of 1831, which requires that all sales of slaves to be valid, shall be in writing?
For the complainant it is argued, that this statute can have no bearing on the case, because Moore at the time of the contract was a citizen of the State of Alabama, and the negro, the subject of the contract, actually in that State.
This, it is replied, makes no difference, for though Moore was a citizen of Alabama, yet he made the contract in the State of Tennessee, and personal property being the subject of it, the lex loci contractus, and not the lex rev sitce, must govern, as to the forms necessary to its validity. This is a question of'authority.
Mr. Story, in his treatise on the conflict of laws, says, in sec. 342, “generally speaking, the validity of a contract is to be decided by the law of the place where it is made. If valid there, it is by the general law of nations, held valid every where.” In sec. 243, he says, “the same rule applies, vice versa, to the invalidity of contracts; if void or illegal by the law of the place of the contract, they are generally held void and illegal every where.” In sec. 260, he says “another rule respecting the validity of contracts is, that all the formalities, proofs or authentications of them, which are required by the lex loci, are indispensable to their validity every where.”
In discussing these principles, the authorities cited, and examined, are civilians chiefly, but they are as much principles of the com- *455 rnon law, as of the civil. In sec. 372, of the same book quoted, the author says, “the general rule of the common law on this subject is, that in respect to moveables, the law of the place where the contract is made, will, with few exceptions, govern the forms and solemnities thereof. But as to immoveables, no contract is obligatory or binding, unless the contract is made with the forms and solemnities required by the local law, the lex situs’’
These principles are decisive of the case under consideration. The contract for the sale of the slave having been made in this State, and our statute of 1831, making void all contracts for the sale of slaves unless they be in wriiing, and this having been by parol, it necessarily follows, the complainant’s intestate acquired no right to the slave ; he remained the property of Moore,- and was subject to the executions of the defendant.
The decree is, therefore, affirmed, and the bill dismissed.